M'CARTY *against* SPRINGER.

A contracted to sell to B a house and lot clear of incumbrances: C, to whom A was indebted, was present at the execution of the agreement; B executed a judgment bond to C by consent of A, for the purchase money, and took A's receipt on the article of agreement for the bond "which when paid would be in full of the purchase money:" a judgment was entered upon the bond.  A, previously, had entered into a recognizance as surety of a sheriff, which was subsequently sued and a judgment obtained thereon, for the payment of which, the same house and lot of A was levied and sold and purchased by B at a sum less than the amount of the bond to C.' Upon a *scire facias* to revive the judgment of C, against B, it was *held,* that B had a good defence to the amount of the purchase money which he paid to the sheriff: and that such defence might be made upon the *scire facias* as well as if the trial was upon the original judgment opened.

ERROR to the Common Pleas of *Fayette* County.

This was a *scire facias* to revive a judgment in which *Levi Springer* was plaintiff below, and *Daniel B. M'Carty* defendant. The facts which gave rise to the questions argued and decided are fully stated in the opinion of the court.

*N. Ewing,* for plaintiff in error.

*Dawson,* for defendant in error.

The opinion of the court was delivered by

HUSTON, J.---The following statement of facts was presented to the court: A certain *N. Mitchell,* on the 19th of *February,* 1818, contracted by article of agreement to sell to *D. M'Carty,* a lot of ground in *Uniontown:* he was to convey it clear of incumbrances; and the conveyance to be made when the money was paid.  *Mitchell* was indebted to *Springer,* and having become embarrassed, a meeting took place between him and *Springer* and *M'Carty,* at the office of *Springer's* attorney, where a judgment bond, dated the 5th of September, 1822, was given by *M'Carty* to *Springer* for the balance due on the articles of agreement.  On the articles was endorsed a receipt by *Springer's* attorney, mentioning that such bond was given, and declaring that *when paid* it would be in full of the purchase money.  *Springer* was present *and knew the consideration* of the bond given him.  No deed was executed by *Mitchell* to *M'Carty,* nor could he then, or at any other time after, give a title clear of incumbrances.  On the 19th of October, 1820, *Mitchell* had entered into a recognizance as one of the sureties of *D. P. Linch,* sheriff of *Fayette* county, in the sum of ten thousand dollars; on this a *sci. fa.* was issued, *Commonwealth* for *Bachman* v. *Lynch* and his sureties; and on 21st June, 1825, a judgment was entered, and this lot sold as the property of *Mitchell,* and purchased by *M'Carty,* in the name of a trustee.  It also appeared that *Springer* had entered satisfaction on a judgment

which he had against *Mitchell* for the amount of his bond, but when this satisfaction was entered, was not agreed on by the counsel, nor did it appear on the record: nor was it stated, that this was done in pursuance of any agreement made when the bond was given.

On 7th of September, 1822, judgment was entered on this bond in favor of *Springer* v. *M'Carty* for ten thousand and fifty-eight dollars, and fifty cents, and interest from 5th September, 1822. A *sci. fa.* issued to revive the judgment to October term, 1828; at the return, the defendant applied to the court to open the original judgment, and let him into a defence; this was refused, and he then plead *nul tiel record,* and payment with leave to give the special matter in evidence. The dispute is, whether he should be allowed credit, for the sum which he had paid for the house and lot at sheriff's sale, (about six hundred and sixty-one dollars.)

The court instructed the jury that this defence could not be made on the *sci. fa.* but ought to have been made to the judgment. We think this is error; because, even if it had been possible to plead to a judgment, entered on a warrant of attorney, which it was not, yet the fact on which the defence rested, occurred after the judgment was entered. Until the lot was sold by the sheriff, it was possible that *Mitchell* might be able to make a deed clear of incumbrances: after that sale, no conveyance by him would have any effect. The matter to be proved under the notice was a fact, which occurred after the judgment entered; and the legal effect of such proof was open to the court and jury—and secondly, the court said "it was a rule of law, that when one, before taking an assignment, calls on the obligor who assents and says it shall be paid, and gives a judgment accordingly, it will not be allowed that he shall afterwards object to the payment, on account of any thing existing prior to the assignment. On both these points we think the law is with the plaintiff. *M'Carty* knew of the lien of the recognizence, and was himself a party to it; as one of the sureties of *Lynch;* he might have made defence originally; he did not do so; he assented to the arrangement with *Springer,* and gave him a judgment."

In the hurry of a trial, the judge overlooked the fact, that the defence is, not that the property was bound by the recognizance; but that it had been sold on the recognizances, a fact which arose after, and not before the date of the bond. And further, admitting the law to be as stated, yet this is not a bond given to *Mitchell,* and assigned to *Springer,* after calling on *M'Carty,* nor is the evidence, that *Springer* called on *M'Carty,* and asked him if the bond was good, and was told there was no defence. The case expressly finds, that no deed had been made; that when *M'Carty* was ready to pay his money, he had a right to call for a deed clear of incumbrances; and that *Springer* knew all

(M'Carty *v.* Springer.)

this.  We have no evidence who procured the meeting of the parties at which this bond was given.  It is possible that *Springer,* finding his demand against *Mitchell* desperate, procured the meeting and the arrangement, and got *M'Carty's* bond as collateral security for *Mitchell;* it is possible, that instead of *M'Carty* inducing him to take this bond, the persuasion was by *Springer.* If it was understood that *M'Carty* was to pay at all events, whether he got a deed clear of incumbrances or got no deed, it is not easy to explain why a conditional receipt was put on the articles of agreement by *Springer's* attorney.  If *M'Carty* was taken absolutely and *Mitchell* discharged, *M'Carty* was entitled to a deed at that time; for *Mitchell* was paid, and an absolute receipt ought to have been written on the articles.  But the conditional receipt is perfectly intelligible, and saying nothing about *Springer's* judgment at that time is perfectly intelligible, and a good reason existed why *Mitchell* did not make the deed, if this bond was only a collateral security for a pre-existing debt, and payable to *Springer* on the same terms on which the money was payable to *Mitchell.* The fact of *M'Carty's* giving the judgment bond, taken alone, is against him; the facts that he got no deed, that the conditional receipt and not a receipt in full, was put on the article, looks as if all was an arrangement to depend on future events, and if *Springer* was, by an agreement at that time, to enter satisfaction on his judgment against *Mitchell,* it would have weight in his favor; if there was no such understanding at that time, and he entered satisfaction after *Mitchell's* property was sold, or after it was levied on, or otherwise understood he could obtain nothing from it, and solely to strengthen his claim against *M'Carty,* it might weigh the other way.

A negotiable note assigned in the course of business, the indorsee holds it free from defence by the maker; but if only given as a collateral security for a debt, it is considered as the property of the endorsor and not of the endorsee, and is open to any just defence by the maker.  So if the indorsee takes it long after it is due, which would be reason to suspect there would be a defence, much more would this be the case, if he had positive notice that there was a defence.  And so if a person holding a bond, to which he knew there was a defence or would be one, and another person, who also knew this, should combine and induce the obligor who was ignorant of a defence, to use words which would bind him to the assignee, he would be relieved on proving the fraudulent combination to entrap him---fraud. which vitiates every thing, would have the same effect here.

Instead of assuming that this bond was given at the instance of *M'Carty,* and was understood and intended by the parties as closing the whole transaction, as entitling *M'Carty* at once to his deed,

· (M'Carty *v.* Springer.)

and discharging him from *Mitchell,* and discharging *Mitchell* at once and finally from *Springer,* for the amount of the bond. It ought to have been inquired whether these things were so, and the jury should have been told, that in that event, the plaintiff must receive his whole demand. But that if *Springer* still retained his judgment against *Mitchell;* if *M'Carty* did not pay *Springer,* he was still held on the article to *Mitchell.* If his bond was only a collateral security to *Springer,* and none of the parties considered it as a final settlement or discharge; if all depended on *M'Carty* getting a deed clear of incumbrances, and he was not to get a deed till he paid the bond or paid *Mitchell,* in short if all was as much conditional as before *Springer* interfered, then *M'Carty* has a defence, for so much as he paid for the house, and interest from the time he paid.

Judgment reversed and a <i>venire de novo awarded.</i>